## HINSHAW *v.* GILPIN.

TRESPASSING ANIMALS.—*Adjoining Proprietors.—Partition Fence.— Instruction.*—In an action for damages, against an adjoining proprietor, for injury to a crop growing within the plaintiff's enclosure, by the cattle of the defendant, which had broken over a partition fence and entered upon such crop, wherein a third person had testified that he was the owner of an undivided interest in such crop, it was not error in the court, in its instructions to the jury, to refer to the ownership claimed by the witness.

SAME.—*Agreement to Maintain Partition Fence.—Evidence.— Witness.— Expert.*—It was not error in such action to instruct the jury, that, if the defendant's cattle had broken over that part of such fence which it was the plaintiff's duty to maintain, the plaintiff could not recover unless he had established " by the testimony of skilful men," that " the fence was such as good husbandmen generally keep."

. From the Hamilton Circuit Court.

*D. Moss, T. J. Kane* and *T. P. Davis,* for appellant.
*J. W. Evans* and *R. R. Stephenson,* for appellee.

HOWK, C. J.—This suit was commenced by the appellant, as plaintiff, against the appellee, as defendant, before a justice of the peace of Hamilton county, in a complaint of a single paragraph, wherein the appellant alleged, that, on the 8th day of September, 1876, and frequently since, the appellee suffered his cattle, to wit, four cows and one yearling bull, to unlawfully break into the appellant's cornfield, and destroy a large quantity of corn therein growing, to the appellant's damage in the sum of fifty dollars. Wherefore, etc.

The trial of the cause before the justice resulted in a judgment for the defendant, the appellee, and the plaintiff appealed therefrom to the court below.

In this latter court, the cause was tried by a jury, and a general verdict was returned for the appellee. With their general verdict, the jury also returned their special findings on particular questions of fact submitted to them; but, as there was no motion for a judgment on these special findings, we need not set them out in this opinion.

The appellant's motion for a new trial having been over-ruled, and his exception entered to this ruling, judgment was rendered by the court on the general verdict.

In this court, the only error assigned by the appellant is the decision of the circuit court, in overruling his motion for a new trial. In this motion, the following causes for such new trial were assigned :

1. The verdict of the jury was contrary to law ;

2. The verdict was not sustained by sufficient evidence ;

3. The verdict was contrary to the evidence ; and,

4. The court erred in giving instructions numbered respectively from 6 to 15, both inclusive, to the giving of each of which said instructions the appellant at the time excepted.

In their argument of this cause, in this court, the appellant's counsel evidently rely upon the fourth cause for a new trial, the alleged error of the court below, in its instructions to the jury, as the only ground upon which they claim a reversal of the judgment and a new trial of the action. We will briefly consider and pass upon the objections of counsel to the different instructions complained of in argument.

Counsel say : " The sixth, seventh, eight and ninth instructions are each based upon the theory that one Benjamin Smith is the owner of the corn in controversy, or at least a part of it. There is no evidence showing that said Smith had, or claimed to have, any interest in the corn in controversy, claimed to have been destroyed by appellee's cattle. The instructions should be applicable to the evidence ; and while a part of the instructions referred to may be correct, as a proposition of law, they are all erroneous when applied to the evidence." The objections of the appellant's attorneys to these instructions are not sustained by the evidence in the record. On the trial, Benjamin Smith was a witness ; and his evidence, which

was not contradicted, showed that he was the owner of one-half of the corn in controversy. These instructions were therefore " applicable to the evidence ;" and, as counsel concede them to be correct as legal propositions, they were not " erroneous, when applied to the evidence."

The appellant's attorneys complain, in argument, of the eleventh instruction, which reads as follows :

" Or, if you find from the evidence, that the fence, over which the stock of the defendant entered on the lands of the plaintiff, was a partition fence, dividing the lands of the parties to this suit, and that the stock of the defendant crossed over such fence at a place where it was the duty of the plaintiff to maintain such fence, then defendant would not be liable in this case, unless the plaintiff has shown, that the fence was such as good husbandmen generally keep, by the testimony of skilful men."

This instruction was not erroneous. On the contrary, we think it stated the law correctly, where the suit is between adjoining proprietors, as to a partition fence between their lands. Under section 15 of "An act concerning inclosures, trespassing animals, and partition fences," approved June 4th, 1852, as the section was amended by an act approved December 19th, 1865, provision was made for " a lawful partition fence," which should in all cases " be such as to enclose and restrain sheep, unless by mutual consent of the parties interested, they agree to build a fence only to restrain or enclose horses, mules or cattle." 1 R. S. 1876, p. 496. Prior to the passage of this amendatory act, the statutes of this State did not provide for nor define " a lawful partition fence." The closing sentence of said section 15, as it now reads, was all there was of said section prior to its amendment, the original section reading as follows : " Except when otherwise specially agreed, partition fences, dividing lands occupied on both sides, shall be maintained throughout the year, equally by both parties." 1 G. & H., p. 343.

As the statute stood prior to the amendatory act of 1865, " a lawful partition fence" was neither provided for nor required, as it has since been. If, in this case, it was specially agreed between the parties, as the appellant's own testimony tended to show, that he should maintain a particular portion of the partition fence, then it was his duty, under the statute, to maintain such portion of the fence; and if, as his own evidence tended to show, the appellee's cattle crossed over such fence, at a place where it was the appellant's duty to maintain it, then the appellee would not be liable for the damage done by his cattle, unless the appellant had shown, that, at the place where the cattle crossed over, there was a " lawful partition fence;" such as good husbandmen generally keep, " on the testimony of skilful men." This was the purport of the eleventh instruction, and we think it stated the law.

Appellant's counsel claim that the twelfth instruction was erroneous for the same reasons, as it was " based upon much the same theory" as the eleventh instruction was. It seems clear to us, that since, by the amendatory act of December 19th, 1865, lawful partition fences are provided for and required, the provisions of section 2 of the act of June 4th, 1852, in relation to lawful fences, have become and are equally applicable to lawful partition fences. Especially is this so, where, as in this case, the parties have specially agreed that the whole, or a specific part, of a partition fence shall be maintained by one of the parties. No error was committed by the court in giving the jury the twelfth instruction.

No objection has been pointed out by the appellant's attorneys to any of the other instructions.

We think that the appellant's motion for a new trial of this cause was correctly overruled.

The judgment is affirmed, at the appellant's costs.