## TREMAIN, ADMINISTRATOR, *v.* SEVERIN ET AL.

[No. 2,086.   Filed December 16, 1896.]

BILLS AND NOTES.—*Principal and Surety.—Decedent's Estates. — Statute Construed.*—Under the provisions of section 2468, Burns' R. S. 1894, that "if a decedent be a surety only in any joint, or joint and several contract or in any judgment founded thereon, his estate shall not be liable for the payment thereof, unless it be shown that the principal is a nonresident of this State or is insolvent," etc., proof that principal was insolvent at the time of the trial is sufficient to justify a judgment against a decedent's estate on a claim filed against the estate wherein decedent was surety on a promissory note which was the basis of such claim, without showing that payee used due diligence in prosecuting the principal to insolvency, where no notice was given by surety to proceed against principal.

EVIDENCE.—*Admissibility of, in an Action on Claim Against a Decedent's Estate.—Agency.— Statute Construed.*—The signing of the name of a surety to a note, at the latter's request, and in his presence by one of the makers, does not constitute such maker an agent and render him incompetent to testify to such fact after the death of surety, in an action against his estate on such note under section 508, Burns' R. S. 1894, providing that "No person who shall have acted as an agent in the making or continuing of a contract with any person who may have died. shall be a competent witness, in any suit upon or involving such contract, as to matters occurring prior to the death of such decedent, on behalf of the principal to such contract, against the legal representatives or heirs of the decedent."

From the Decatur Circuit Court. *Affirmed.*

*James K. Ewing*, and *John D. Wallingford*, for appellant.

*Herod & Herod*, for appellees.

REINHARD, J.—This action was brought in the nature of a claim filed by the appellees against the estate of the appellant's decedent, on a promissory note. The cause was tried by the court, and there was a finding and judgment in favor of appellees, and an allowance for the entire amount of the claim.

It is insisted that the evidence fails to support the verdict. The evidence shows that the note was executed by the decedent, Charles Anderson, as surety for John Swartz and Samuel Swartz. There was no proof that any suit was ever instituted against the principals or either of them, and no excuse is shown for this omission, except that evidence was introduced tending to show that at the time of the trial both the principals were insolvent. No evidence was offered to show what the financial condition of the principal debtors was at the time of the maturity of the note or thereafter until the time of the trial. The note fell due in December, 1895.

It is the contention of appellant's counsel that the failure of proof of the diligent prosecution of the note entitled the appellant to a finding and judgment in his favor, for the reason that the failure to so prosecute operated to discharge the appellant. This contention is founded upon the provision of the section of the statute which reads as follows: "If the decedent be a surety only in any joint, or joint and several contract, or in any judgment founded thereon, his estate shall not be liable for the payment thereof, unless it be shown that the principal is a nonresident of this State or is insolvent: *Provided*, That, although the principal be a resident of this State and his solvency be not

proved, nevertheless the claim may be allowed against the estate provisionally, to be paid on subsequent proof of the diligent prosecution of the principal to insolvency, or that such prosecution would not have availed. The final settlement of the estate shall not be delayed by reason of such allowance, but an amount of money sufficient to discharge the claim, or its *pro rata* where in case the estate be insolvent, may be paid into court for that purpose. After notice to the creditor, and on proof that his demand has been paid, or that he has failed to diligently prosecute the principal, and that such prosecution would have availed, the court shall order the money reserved to be distributed to the heirs or legatees. The creditor may, at any time after notice to the parties interested, apply for the payment of his claim; and if it appears that he has diligently prosecuted the principal to insolvency, or that such prosecution would not have availed, the court shall order his claim to be paid." Section 2468, Burns' R. S. 1894 (2313, Horner's R. S. 1896).

Whether or not this contention of appellant's counsel can be upheld must depend, of course, upon the proper construction of the statute. In the case before us the contingency upon which the estate is primarily exempt from liability has arisen, unless the facts bring it within the scope of one of the exceptions named. The decedent was a surety upon a joint or joint and several contract. His estate is, therefore, not liable unless the principals are nonresidents of the State, or insolvent. It was shown that the principals are insolvent. The estate is, therefore, liable. When the insolvency has been duly established, the latter portion of the section quoted, *i. e.,* that portion which follows and is contained in the proviso, cannot be ap-

plicable, for the sufficient reason that no such case as is contemplated by such proviso has arisen. The case supposed is one in which the insolvency has not been proved. In that case the claiment·has yet another remedy. He may have the claim allowed provisionally, to be paid only in the event that he prosecute the principal to insolvency after the allowance, or show that such prosecution would be of no avail. When the fact of the insolvency of the principal is established in the first instance, such fact, in itself, renders the estate liable without reference to what may take place thereafter. In the case at bar the insolvency was shown to the satisfaction of the court trying the cause. This was sufficient to defeat the immunity from liability which would otherwise have been available to the estate. The principals were shown to be insolvent and, therefore, the estate is liable, notwithstanding the decedent was a surety.

This general proposition is admitted by the appellant's counsel, if we correctly interpret their brief, but they further insist that the insolvency spoken of in the statute has reference, not to the time of the trial, but to the time of the maturity of the note, and thenceforth to the day of trial. If the principal was insolvent during all this time, then they concede that the estate would be liable, notwithstanding the fact that the decedent was only surety. The only other alternative counsel claim, upon which the estate may be held liable, is that the claimant must show that he used due diligence against the principal debtor. By "due diligence" counsel mean, as they inform us, that suit must be brought by the holder of the note at the next term of court after the maturity of the note. In other words, their contention is, that insolvency, at the time suit is brought, or at the time of trial, does not raise any presumption of insolvency prior to the time

Tremain, Administrator, *v.* Severin *et al.*

when suit was instituted, and that it follows conclusively, therefore, that in the present case due diligence was not used.

It is true that suit might have been instituted upon the note as early as February, 1895. Whether the decedent was then living or not is not shown.

It is also true that insolvency at the time of the trial does not necessarily establish insolvency at the time of the maturity of the note. But it was not necessary to prove insolvency in the present case at the time the note matured, and from that time until suit was brought. Nor was it incumbent on the appellees to prove that the principal debtors were prosecuted to insolvency, or that due diligence was used in that behalf as soon as the note matured. This is not a transaction between the holder and indorser of a note, nor is it the case of the payee of a note against a surety thereon who has given notice to such payee to proceed against the principal. Sections 1224, 1225, Burns' R. S. 1894 (1210, 1211, Horner's R. S. 1896).

Ordinarily, a surety on a note is not exempt from liability by reason of the fact that the holder of such note has failed to prosecute the principal to insolvency within a reasonable time after the instrument fell due. Sureties, as well as principals, are liable thereon as long as the action is not barred by the statute of limitations. If the surety desires suit to be instituted against the principal debtor, he must give notice to the holder as required by the statute last cited. It is not claimed that such notice was given in the present case. The statute under which the appellant claims immunity from liability contains no provision whatever which requires the holder of the note to proceed against the principal as soon as the note matures, or within a reasonable time thereafter. All it requires at the hands of the payee or holder is,

to show that the principal is insolvent, i. e., insolvent at the time of the suit. There could be no reason for giving the statute the construction for which the appellant contends. The consequences of such a construction would be that in every case where a note upon which there is a surety had been running for a considerable time after its maturity, and the surety should die, the failure of the holder to bring suit immediately after maturity would discharge the estate of the surety, unless it be shown that the principal was insolvent during all the time between the maturity of the note and the filing thereof against the estate. The surety might have had ample time and opportunity during his life to notify the holder to sue, as the statute requires, and yet he might have failed to do so, and this failure would constitute no excuse to the holder of the note for his own failure to prosecute such an action. In all such cases it would be impossible to enforce the collection of the note after the surety's death, while if the surety were alive, he would be clearly liable. Such results as these, which would inevitably follow such construction, were never intended by the legislature in the enactment of the statute relied upon, and such a construction would, in our opinion, be utterly unwarranted. The obvious purpose of the statute was to compel the holders of such claims as this against estates of deceased sureties to first exhaust the property of the principal debtor before recourse is had against the estate of the decedent. If the principal is at the time insolvent it would be an idle ceremony to proceed against him, for nothing could be accomplished thereby except the making of unnecessary costs. We, therefore, think that the claimants had done all they were required to do to entitle them to judgment against the estate of

the surety when they proved the insolvency of the principal.

Appellant's counsel further insist that the court committed reversible error by overruling his objection to the testimony of John Swartz, a witness for the appellees. Counsel say that the objection was made to his competency under section 508, Burns' R. S. 1894, which provides, *inter alia*, that "No person who shall have acted as an agent in the making or continuing of a contract with any person who may have died, shall be a competent witness, in any suit upon or involving such contract, as to matters occurring prior to the death of such decedent, on behalf of the principal to such contract, against the legal representatives or heirs of the decedent."

If the witness John Swartz was really an agent of the decedent in the sense in which the word is used in the statute, he was not a competent witness. If, on the other hand, he was not such an agent, his testimony was properly received.

The note was given to Severin, Ostermyer & Co., for a bill of groceries purchased of them by the firm of Samuel Swartz & Son. The note was signed by Samuel Swartz and John Swartz, the members of said firm, as principals, and the appellant's decedent as surety. John Swartz, the junior member of the firm, was the witness whose testimony was objected to. He testified that he requested the decedent to sign the note for him as surety to which the decedent assented and asked Swartz to write his, decedent's, name to the note, which was accordingly done, the decedent making his mark, to the signature in the presence of Swartz. This is the sum total of the evidence upon the subject of agency. It is our opinion that Swartz was not incompetent as a witness from the fact that he was an agent in the making or continuing of the

contract. The fact that Swartz wrote the decedent's name at his request and in his presence, did not make him such an agent as the statute contemplates. He was at most but an amanuensis,—mere instrument by which the decedent accomplished the purpose of signing the note,—a mere instrument, like a stamp, or a pen. If the signature had been placed to the note by the witness at a time when appellant's decedent was not present, there might be some reason for the contention that Swartz was an agent.

Moreover, it is, to say the least, a question of doubt whether the agent spoken of in the statute must not have been the agent of the opposite party, rather than the agent of the deceased person. The object of the statute doubtless was to prevent the living party from having an advantage over the dead person or his property. Death has sealed the lips of the deceased, and the law aims to close the lips of the living party. If the agent of the living party were allowed to testify against the estate of the decedent as to matters occurring during the life of the deceased, the purpose of the statute would in many cases be defeated. Was it not also the purpose of this statute to prevent the agent of the living party from testifying as to matters that occurred in the decedent's lifetime?

Judgment affirmed.